UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH A. MESSERE,                )
    Plaintiff,              )
                      )
        v.              )        C.A. No. 11-12166-MLW
                      )        LEAD DOCKET NO.
HAROLD W. CLARKE et al.,          )
    Defendants.             )
                      )

JOSEPH A. MESSERE,                )
    Plaintiff,              )
                      )
        v.              )        C.A. No. 11-11705-MLW
                      )        CONSOLIDATED ACTION
LUIS S. SPENCER et al.,           )
    Defendants.             )
                      )

## MEMORANDUM AND ORDER

WOLF, D.J.                                        September 22, 2015

## CONTENTS

I.   INTRODUCTION................................................ 1

II.  BACKGROUND.................................................. 3

III. LEGAL STANDARD FOR MOTION TO DISMISS...................... 5

IV.  PLAINTIFFS' ALLEGATIONS.................................... 8

    A.  Count I: Eighth Amendment ........................... 11

    B.  Count II: Americans with Disabilities Act ........... 28

VI.  JOHN DOE DEFENDANTS........................................ 37

VII. ORDER...................................................... 39

## I.  INTRODUCTION

Plaintiff Joseph Messere is an inmate in the Massachusetts state prison system. He brings this lawsuit against defendants Luis Spencer, Harold Clarke, Thomas Dickhaut, Gary Roden,

Cynthia Sumner (collectively the "named defendants"), and twenty unnamed defendants (the "John Doe defendants"). The named defendants are all prison officials in the Massachusetts Department of Correction (the "DOC"). Messere alleges that the defendants denied him adequate medical care to treat his serious, degenerative spine condition. He claims that the defendants violated his rights under the Eighth Amendment to the United States Constitution and discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq.

The named defendants have filed a motion to dismiss all of Messere's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the court is granting in part and denying in part the motion to dismiss. Specifically, the court is dismissing the Eighth Amendment claims against all of the defendants in their official capacities, and against defendants Dickhaut and Clarke in their individual capacities. The court is dismissing the ADA claims with respect to all defendants in their individual capacities. However, the Eighth Amendment claim against defendants Roden, Sumner, and Spencer in their individual capacities is not being dismissed. The court is also denying the motion to dismiss with respect to the ADA claim against all defendants in their official capacities. In addition, the court is dismissing the

claims against the unnamed defendants without prejudice because they have not been identified or served.

## II.   BACKGROUND

Messere is incarcerated in a Massachusetts state prison. On September 26, 2011, Messere filed a complaint in Messere v. Spencer, C.A. No. 11-11705-MLW ("Spencer"), against defendants Spencer and Roden. He alleged that the defendants, who were officials at the prison where he was incarcerated, violated his constitutional rights by denying him medical treatment and failing to dismiss a prison disciplinary report against him.  On December 2, 2011, Messere filed a complaint in another case, Messere v. Clarke, C.A. No. 11-cv-12166-MLW ("Clarke"), against defendants Spencer, Roden, Clarke, and Sumner.  He alleged, among other things, that the defendants violated his Eighth Amendment rights by denying him adequate medical care.

On April 17, 2012, the defendants in Clarke filed a Motion to Dismiss or in the Alternative for Summary Judgment.  On July 17, 2012, the defendants in Spencer filed a Motion to Dismiss. The plaintiff did not file an opposition to either motion.  On March 12, 2013, Messere moved to consolidate the Clarke and Spencer cases.

In a March 29, 2013 Memorandum and Order, the court granted Messere's motion to consolidate the two cases, consolidating them under the Clarke Case Number 12-cv-12166.  The court also

3

granted the Spencer defendants' Motion to Dismiss with respect to the claims regarding prison disciplinary reports.  The court subsequently denied the plaintiff's motion to reconsider that dismissal.  See June 27, 2013 Mem. and Order.

On August 30, 2013, the court denied the defendants' Motion to Dismiss or in the Alternative for Summary Judgment without prejudice.  The court found that, although the plaintiff had failed to submit an adequate opposition to the motion, that failure was not willful.  See Aug. 30, 2013 Memo. and Order. The court stated that plaintiff's claims were sufficiently pled to defeat the motion to dismiss and that the plaintiff deserved an opportunity to respond as to whether summary judgment was appropriate.  Because the plaintiff's claims were complicated and potentially meritorious, the court offered the plaintiff the opportunity to be represented by counsel.  See id. at 7.

The plaintiff filed a motion requesting appointment of counsel.  On June 21, 2014, the court allowed the motion and appointed Mark W. Batten, Esq., of Proskauer Rose, LLP, to represent the plaintiff.  See June 21, 2014 Memo & Order at 3-4. The court ordered plaintiff's counsel to either respond to the defendant's Motion to Dismiss or in the Alternative for Summary Judgment or to file an amended complaint.

On July 18, 2014, plaintiff moved for leave to file a First Amended Complaint.  Before the court ruled on that motion, on

September 16, 2014, he moved for leave to file a Revised First Amended Complaint ("RFAC").  The defendants opposed the motion for leave to file a RFAC.  In addition, the defendants reported that plaintiff had served interrogatories and production requests on them.  They asked the court to stay discovery until after the defendants had an opportunity to submit, and the court decided, a motion to dismiss the amended complaint.

On March 9, 2015, the court allowed Messere's motion for leave to file his RFAC.  <u>See</u> March 9, 2015 Order.  The court denied the defendants' motion to stay discovery.  <u>Id.</u>

On March 26, 2015, the defendants filed a motion to dismiss the Revised First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The plaintiff opposes that motion.

III.  LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard does not require "detailed factual allegations," but requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets."  <u>In re Citigroup, Inc.</u>, 535 F.3d 45,

52 (1st Cir. 2008); <u>see also</u> <u>Penalbert-Roia v. Fortuno-Burset</u>, 631 F.3d 592, 595 (1st Cir. 2011).  However, "[n]on-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible."  <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (2011).

A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief."  <u>Twombly</u>, 550 U.S. at 559.  That is, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. 556).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  "The relevant inquiry focuses on the reasonableness of the inferences of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  <u>Ocasio-Hernandez</u>, 640 F.3d at 13.

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims."  Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Rodi v. S. New Eng. School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (considering letters attached to the complaint in evaluating a motion to dismiss).  However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint."  Watterson, 987 F.2d at 3-4.  When "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings

7

and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. See Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000).

IV. PLAINTIFFS' ALLEGATIONS

The RFAC contains the following factual allegations.

Messere is a prisoner in the custody of the Commonwealth of Massachusetts. RFAC ¶1. Since December 2002, he has been incarcerated at MCI-Norfolk. Id. Defendants Dickhaut, Clark, and Spencer were each at relevant times Commissioner of the DOC. Id. ¶¶3-5. Defendant Roden was at certain relevant times the Superintendent of MCI-Norfolk. Id. ¶6. Defendant Sumner is, and was at all relevant times, the Deputy Superintendent of MCI-Norfolk. Id. ¶7. Defendant John Does 1-20 are "agencies, organizations, and other entities, as well as officers, employees, representatives, agents, staff, or contractors" for the DOC during relevant times. Id. ¶8.

Messere suffers from spondylolisthesis, a degenerative medical condition that affects the lower back; spondylois, another degenerative spine condition; olisthesis, or bone slippage; and debilitating pain in his back, hip, and leg. Id. ¶13. In 2008, UMASS Correctional Health ("UMCH") was under

8

contract with the DOC to provide medical care for inmates in DOC custody. Id. ¶20. In April 2008, a medical professional at UMCH recommended that Messere "would benefit from [an] ortho consult and [] further [] testing." Id. ¶20. However, Messere did not receive any further consultation, testing or treatment. Id., ¶21.

Messere subsequently filed grievances pursuant to a Massachusetts statute authorizing inmates to file grievances about their conditions of confinement. Id.; see also MGL c. 127 §38E(c). In late 2008, and continuing into 2009, Roden suspended Messere's right to file grievances concerning his medical care. RFAC ¶22.

From November 2008 to March 2009, the defendants placed Messere in solitary confinement. Id. ¶23. Being in solitary confinement exacerbated his condition and increased his suffering. Id.

Messere still did not receive any consulting or testing. Id. ¶24. Instead, the defendants, "through their contractors and agents," instructed Messere to take ibuprofen to treat his medical conditions. Id. Throughout 2009, Messere's condition worsened significantly. Id. ¶25.

In 2009 and 2010, defendants "through its employees, contractors, and agents," prescribed a series of epidural

steroid injections.   Id. ¶26.   These injections caused Messere greater pain and further limited his mobility.   Id.

On September 26, 2011, Messere filed his fist civil action in this case.   See id. ¶27; Spencer, D. Mass. Case No. 11-cv-11705-MLW.   His complaint alleged a denial of medical treatment. RFAC ¶27.

The defendants subsequently arranged for Messere to be evaluated for his medical conditions at the Lemuel Shattuck Hospital Correctional Unit ("Shattuck").   Id. ¶28.   He was evaluated at Shattuck on October 13, 2011.   Id.   His medical records from that evaluation state that he would "have to be sent [to] another facility to be evaluated by a neurosurgeon," and that "there are no other option[s] available [at Shattuck]." Id. ¶29 (quoting RFAC Ex. J).

On December 2, 2011, Messere filed a second complaint.   Id. ¶30; Clarke, D. Mass. Case No. 11-cv-12166-MLW.   He alleged that defendants Clarke, Spencer, Roden, and Sumner failed to provide adequate treatment for his serious medical condition.   RFAC ¶30.

Defendants arranged for Messere to be evaluated by medical professionals at Tufts Medical Center ("Tufts") on January 24, 2012.   Id. ¶31.   At the evaluation, he was diagnosed with spondylolisthesis, spondylosis, and olisthesis.   Id. ¶31 (citing RFAC Ex. K).

10

On April 13, 2012, Messere underwent surgery at Tufts to treat the diagnosed problems.  Id. ¶32 (citing RFAC Ex. L). Despite the operation, he still suffers from serious and debilitating pain and numbness in his hip, leg, and thigh.  Id. ¶33.

The RFAC contains two counts.  Count I, brought pursuant to 42 U.S.C. §1983, alleges that the defendants violated Messere's Eighth and Fourteenth Amendment rights.  Count II alleges that the defendants discriminated against Messere on the basis of a disability, in violation of his rights under the Americans with Disabilities Act, 42 U.S.C. §12101.  Messere is seeking declaratory and injunctive relief ordering each defendant to provide Messere with adequate medical treatment, compensatory damages, punitive damages, and attorneys' fees.

V.  ANALYSIS

A.  Count I: Eighth Amendment

Count I is brought pursuant to 42 U.S.C. §1983 against the defendants in their official and individual capacities.  It alleges that the defendants violated Messere's rights under the Eighth Amendment by deliberately denying him adequate medical care.  Messere seeks an injunction requiring adequate medical treatment, and compensatory and punitive damages.

1.  Legal Standard

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that a right secured to him by the Constitution or by the laws of the United States was violated by a person acting under color of state law.  See 42 U.S.C. §1983.  Under §1983, a prison official must be individually culpable for a constitutional violation to be liable.  As the First Circuit has explained:

> [Under 42 U.S.C. §1983,] supervisory liability cannot be predicated on a respondeat superior theory. Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir.1999).  Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions. Id.  Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization.  See Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir.1999).  Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence . . . amounting to deliberate indifference.'"  Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.1995) (quoting Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir.1988)).

Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (emphasis, omission, and alterations in original).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825,

832 (1994) (internal quotation omitted).   The Eighth Amendment, in pertinent part, prohibits the infliction of "cruel and unusual punishments."   U.S. Const., Am. VIII.   Such punishments are those that are "incompatible with the 'evolving standards of decency that mark the progress of a maturing society'" or that involve the "unnecessary and wanton infliction of pain" on an inmate.   *Estelle*, 429 U.S. at 102-104 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).   The Eighth Amendment, therefore, "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates."   *Farmer*, 511 U.S. at 832 (internal quotation omitted).

The Supreme Court has explained the reasons for the Eighth Amendment, and the important values that it both represents and protects:

> As a consequence of their own actions, prisoners may be deprived of rights that are fundamental to liberty. Yet the law and the Constitution demand recognition of certain other rights. Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment. "'The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.'" *Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (quoting *Trop[]*, 356 U.S. [at] 100 []).

13

Brown v. Plata, 131 S. Ct. 1910, 1928 (2011). Because by incarcerating them, "society takes from prisoners the means to provide for their own needs," it must provide these basic needs or cause prisoners to suffer starvation, torture, and death. Id. "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." Id.; see also Farmer, 511 U.S. at 832.

Therefore, the Eighth Amendment requires that "prison officials must ensure that inmates receive adequate . . . medical care." Farmer, 511 U.S. at 832. However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc).

"The objective prong requires that the [medical] need be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." Id. (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d

203, 208 (1st Cir. 1990)).  With regard to the level of care to be provided, the First Circuit has stated that, "it is plain that an inmate deserves <u>adequate</u> medical care."  <u>United States v. DeCologero</u>, 821 F.2d 39, 42 (1st Cir. 1987).  "Adequate services" are "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards."  <u>Id.</u> at 43.  However, the fact that an inmate is entitled to adequate medical care does not mean that he is entitled to ideal care or to the care of his choice.  <u>See</u> <u>DeCologero</u>, 821 F.2d at 42; <u>DesRosiers</u>, 949 F.2d at 18.

The subjective prong requires that the prison official have a "sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." <u>Leavitt v. Corr. Med. Services, Inc.</u>, 645 F.3d 484, 497 (1st Cir. 2011) (internal quotations omitted).  To adequately allege deliberate indifference, a plaintiff must allege facts from which it can plausibly be inferred that the official knew of and disregarded an excessive risk to inmate health or safety. <u>Farmer</u>, 511 U.S. at 837.  In other words, the plaintiff must show that "the official [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have drawn] the inference."  <u>Id.</u> However, even a prison official who knows of such risk does not

15

violate the Eighth Amendment if the denial of particular medical care is based on a reasonable, good faith judgment balancing of the inmate's medical needs with legitimate, penological considerations.   See Battista, 645 F.3d at 454.   This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"   Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

      2.   Analysis

      a.   Official versus Individual Capacity

Section 1983 provides a right of action against any "person" acting under color of law who violates another's federal rights.   See 41 U.S.C. §1983.   The Supreme Court has held that, when a state officer is sued in his official capacity for money damages, he is not a "person" within the meaning of §1983.   See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see also Wang v. New Hampshire Bd. Of Registration in Medicine, 55 F.3d 698 (1st Cir. 1995).   Accordingly, the court is dismissing the Eighth Amendment claim brought under §1983 against the defendants in their official capacities insofar as it seeks money damages.

A plaintiff seeking injunctive relief under §1983 may sue a state official in his official capacity.   See Will, 491 U.S. at 71 n.10.   Messere argues that the court should allow his §1983

claim to proceed against the defendants in their individual capacities because he is seeking an injunction requiring them to provide adequate medical care for him. However, the RFAC does not allege an ongoing violation of his Eighth Amendment rights. Therefore, Messere has failed to plead a claim for injunctive relief under Section 1983.

In order to state a claim for injunctive relief requiring prison officials to provide Messere with adequate medical care, he must allege "not only . . . that the treatment [he] received was constitutionally inadequate, but also that the [Defendants were]—and continue to be—deliberately indifferent to [his] serious" medical condition. Kosilek, 774 F.3d at 91. Messere alleges that, since filing this lawsuit, he has received the medical evaluations that he needed and has received surgery for his back condition. See RFAC ¶¶28-32. All of the allegations in the RFAC focus on the defendants' failure to provide adequate medical treatment for his back injury prior to April 2012, when he underwent surgery at Tufts Medical Center. See id. ¶¶33-35. While he alleges that he suffers from serious back pain, he does not allege that he would benefit from further medical treatment. See id. ¶¶36-37. Instead, he alleges that his ongoing pain and suffering was caused by the alleged multi-year delay in providing him with adequate treatment. See id. ¶37. Therefore, the RFAC alleges an Eighth Amendment violation that occurred

17

prior to April 2012, when he received surgery.  See RFAC ¶39 ("Messere _faced_ a serious medical need . . . and continues to suffer from pain . . . .) (emphasis added); _id._ ¶40 ("Defendants . . . _were_ deliberately indifferent to that serious medical need," "_denied_ or _delayed_ access to appropriately qualified medical personnel, and _failed_ to carry out medical orders in a timely manner.") (emphasis added); _id._ ¶42 ("Defendants _deprived_ Messere of his right to adequate medical care under the Eighth" Amendment.) (emphasis added).

Because Messere has not alleged that the defendants are still deliberately indifferent to his medical needs, he does not state a claim for injunctive relief.  See Kosilek, 774 F.3d at 91.  Therefore, he has not stated any claim pursuant to §1983 that may be maintained against the defendants in their official capacity.  Accordingly, Count One is being dismissed to the extent that it alleges claims against defendants in their official capacities.  See Will, 491 U.S. at 71.

### b.   Individual Capacity Suits

Messere's claim for money damages may proceed against the defendants in their individual capacities if he has adequately stated a claim against them for a violation of his Eighth Amendment rights.  See Hafer v. Melo, 502 U.S. 21, 31 (1991). The claim against each defendant must be considered individually.  See Whitfield, 431 F.3d at 14.  As explained

18

earlier, to adequately allege a violation of his Eighth Amendment rights, Messere must plead facts from which the court can reasonably infer that he suffered from a serious medical need that did not receive adequate medical care, and that each defendant was deliberately indifferent to that need. <u>Kosilek</u>, 774 F.3d at 82.

Messere has adequately alleged that he had a serious medical need. He has alleged that he was diagnosed with a serious degenerative spine condition and that doctors recommended various forms of treatment. <u>See</u> RFAC ¶¶20; 30. This constitutes a serious medical need for Eighth Amendment purposes. <u>See Kosilek</u>, 774 F.3d at 82.

He has also adequately pled that, prior to April 2012 when he received surgery at Tufts, he was denied adequate medical care. He alleges that a doctor recommended that he be evaluated by an orthopedist, but that the "defendants, through its employees, contractors, and agents," instead provided him with other ineffective treatments. RFAC ¶¶20-26. The treatments caused his medical condition to worsen. <u>Id.</u> ¶¶25-26. Accepting these allegations as true and drawing all reasonable inferences in favor of Messere, such medical care was constitutionally inadequate because it was not "of a quality acceptable within prudent professional standards." <u>DeCologero</u>, 821 F.2d at 43.

Therefore, Messere's allegations satisfy the objective prong of the Eighth Amendment claim. However, he must also satisfy the subjective prong by showing that each named defendant was deliberately indifferent to his serious medical need. Leavitt, 645 F.3d at 497. To show that a given defendant was deliberately indifferent to his serious medical need, Messere must allege facts that allow a reasonable inference that the defendant knew that Messere was suffering from a serious medical condition, Farmer, 511 U.S. at 837, and unjustifiably failed to provide him adequate medical care, Battista, 645 F.3d at 454.

### i.  Deliberate Indifference of Dickhaut and Clarke

The RFAC does not include any factual allegations that would support a reasonable inference that defendants Clarke or Dickhaut knew of Messere's medical condition.  Messere's only specific allegation regarding Dickhaut is that he is the Acting Commissioner of DOC.  RFAC ¶2.  Messere alleges that Clarke was the DOC Commissioner "at certain times relevant to this Complaint."  RFAC ¶4.  He alleges that Clarke signed the DOC "Strategic Plan" for 2010-2015, which acknowledged the "significant impact[]" that DOC's spending cuts would have on inmate medical services.  Id. ¶14 (quoting id., Ex. A).  The Strategic Plan that he signed also noted the potential adverse

effects of prison overcrowding.  Id. ¶16 (citing id., Ex. A). He has not taken any corrective action regarding prison overcrowding.  Id. ¶18.

Messere also alleges that the "defendants" knew of his medical condition.  See RFAC ¶23 ("defendants" knowingly prevented him from receiving medical care); id. ¶35 ("defendants" knew of a serious risk of harm to him).  However, these allegations are conclusory and may be disregarded in assessing the validity of plaintiff's complaint.  See Ashcroft, 556 U.S. at 680-81 (disregarding general allegation regarding defendant's knowledge); Ocasio-Hernandez, 640 F.3d at 12.

The remaining factual allegations, taken as true, do not "allow the court to draw a reasonable inference" that Clarke or Dickhaut, as DOC Commissioners, knew of Messere's medical problem.  See Ashcroft, 556 U.S. at 678.  Messere does not allege that he or anyone else informed them of his medical needs.  Nor does he allege that, as Commissioners of the DOC, they would have been aware of his medical grievances.  The fact that the defendants' employees, contractors, or agents knew of Messere's medical condition is not sufficient to impose liability on these defendants as supervisors.  See Whitfield, 431 F.3d at 14; Farmer, 511 U.S. at 837.  Because the RFAC does not plausibly allege that they knew of his medical condition, it fails to adequately plead that they acted with deliberate

indifference.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.  Accordingly, the court is dismissing Messere's Eighth Amendment claim against Dickhaut and Clarke.

ii.  <u>Deliberate Indifference of Spencer, Roden, and Sumner</u>

The allegations against the remaining named defendants are somewhat more specific.  Each of these defendants worked for some relevant period of time at MCI Norfolk, where they allegedly learned of Messere's medical condition.  The court finds that the additional facts alleged concerning what Spencer, Roden, and Sumner knew are sufficient to state a plausible claim that these defendants were deliberately indifferent to Messere's serious medical needs.

Messere alleges that Spencer was, "at certain times relevant to this Complaint," the DOC Commissioner and "at certain times relevant to this Complaint," the Superintendent of MCI-Norfolk.  RFAC ¶5.  Spencer signed the DOC "Strategic Plan" for 2013-2018, which acknowledged the potential adverse effects of prison overcrowding.  <u>Id.</u> ¶17 (citing <u>id.</u>, Ex. G).  Spencer has not taken any corrective action regarding prison overcrowding.  <u>Id.</u> ¶18.

In addition, attached to his original complaint in 2011, Messere provided two copies of grievances concerning medical conditions that were signed by Spencer when he was

22

Superintendent of MCI Norfolk. See Spencer, 11-cv-11705, Complaint, Ex. A at 7-9 (Docket No. 1-1). The grievances are dated August and September of 2007, and February of 2008. In the grievances, Messere alluded to problems with his back and feet, asked to be evaluated at an orthopedic clinic instead of UMCH, threatened to file a lawsuit, and complained about the inmate grievance process. See id. Spencer responded to each grievance in writing, stating that Messere was required to use the UMCH grievance process to raise medical grievances. See id.

Messere alleges that Roden was "at certain times relevant to this Complaint, the Superintendent of MCI-Norfolk." RFAC ¶6. In late 2008, he suspended Messere's right to file grievances concerning his medical care. See RFAC ¶22.

Messere alleges that Sumner was "at all times relevant to this Complaint, the Deputy Superintendent of MCI-Norfolk." Id. ¶7. In addition, in the Spencer case, Messere submitted a letter that he mailed to Sumner on September 30, 2007, that mentions his "serious degenerative spine" condition. See Spencer, 11-cv-11705, Complaint, Ex. A at 13 (Docket No. 1).[1]

---

[1] There is a question whether the court should consider the documents relating to Sumner and Spencer that were filed in the Spencer case but are not referenced in the RFAC. Generally in considering a motion to dismiss, the district court should only consider "facts and documents that are part of or incorporated into the complaint." Rivera, 575 F.3d at 15. However, the court finds that these documents fall into the narrow exception for documents that are "central to plaintiff['s] claim," and may

Accepting all non-conclusory factual allegations as true and drawing all reasonable inferences from them, Rodriguez-Ortiz, 490 F.3d at 96, the RFAC adequately alleges that defendants Spencer, Roden, and Sumner knew that Messere had a serious medical condition that was not being adequately treated. Spencer responded to grievances from Messere that stated that he had a back problem that needed treatment. Similarly, Messere sent Sumner a letter informing her of his degenerative spine condition and his ongoing pain and suffering. Roden suspended Messere's right to file medical grievances after he filed grievances requesting medical care. It is reasonable to infer that Roden, in suspending Messere's right to file grievances, was aware of the medical condition discussed in his grievances.

In addition, for the reasons stated earlier, Messere has plausibly alleged that these three defendants did not adequately address his medical needs. In short, he has plausibly alleged that he did not receive the follow-up consultations recommended by a medical professional. Instead, he received various allegedly inadequate treatments that made his condition worse. Messere has plausibly alleged that Roden, Sumner, and Spencer knew of his medical needs and did not adequately address them. He has, therefore, satisfied the subjective prong of the

_____

therefore be considered in deciding the motion to dismiss. Watterson, 987 F.2d at 3-4.

deliberate indifference standard for his Eighth Amendment claim against Spencer, Sumner, and Roden. Farmer, 511 U.S. at 837.

The defendants respond that they are non-medical prison supervisors who have no authority to direct inmate treatment. They explain that, at all relevant times, the DOC operated under a contract with private mental health and medical service providers to provide medical care for inmates. DOC policy provides that "the contractual medical provider shall be solely responsible for making all decisions with respect to the type, timing and level of services needed by inmates . . . ." See DOC Clinical Contract Personnel and the Role of DOC Health Services at 610.01, Ex. A to Defs' Memo. in Supp. of Mot. to Dismiss. The policy further provides that "[m]atters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists." Id. Therefore, they contend, as non-medical professionals, they had no authority to interfere with Messere's medical treatments. If the defendants have no role in making medical treatment diagnoses or treatment decisions for individual prisoners, Messere may be unable to show that they were deliberately indifferent to his need for treatment. See Farmer v. Moritsugu, 163 F.3d 610, 615-16 (D.C. Cir. 1998).

However, the court finds that these arguments are most appropriately addressed by a motion for summary judgment filed

after discovery.  The DOC policy was not referenced in the Complaint.  See Rivera, 575 F.3d at 15.  Discovery will enable the plaintiff to assess of how the policy operates in practice. For example, Messere argues that it can be inferred that the defendants actually exercised control over Messere's medical care because, shortly after Messere sued them, he received the medical treatment he desired.  See Battista, 645 F.3d at 453 (Deliberate indifference to the serious medical needs of an inmate may be "evidenced 'by denial, delay, or interference with prescribed health care.'" (quoting DesRosiers, 949 F.2d at 19)). These and related issues should be addressed on a factual record developed at summary judgment or trial.

The defendants' final argument is that they are shielded from suit by qualified immunity.  That contention is unmeritorious at this stage.  Qualified immunity prevents suits against federal and state officials for money damages "unless (1) the facts alleged or shown by the plaintiff make out a violation of a constitutional right and (2) such right was clearly established at the time of the defendants' alleged violations." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 532 (1st Cir. 2011) (internal quotations omitted), cert. denied, 132 S. Ct. 2742 (2012); see Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).  "The classic question that a qualified immunity defense poses is whether the allegedly violated federal

right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly." Camilo-Robles, 175 F.3d at 43.

Viewing the evidence in the light most favorable to the plaintiff, a reasonable official in the defendants' position would have known that his conduct violated Messere's clearly established Eighth Amendment rights. As of 2007, when the allegations in the RFAC begin, the law was clearly established that a defendant who is deliberately indifferent to a plaintiff's serious medical need violates the plaintiff's Eighth Amendment rights. See, e.g., Estelle, 429 U.S. at 102-104; DesRosiers, 949 F.2d at 18; McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999) (holding that it was clearly established, as of February 1997, that deliberate indifference to serious medical needs of prisoners on part of prison officials violates the Eighth Amendment); Easter v. Powell, 467 F.3d 459, 465 (5th Cir. 2006) (per curiam) (same, as of 2006); Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (same, as of 1995). As explained earlier, the plaintiff has adequately alleged that defendants, Sumner, Roden, and Spencer were deliberately indifferent to his serious medical need. Accordingly, these defendants are not now entitled to qualified immunity at this stage. However, the evidence presented at later stages of the

27

case might prove facts entitling one or more of them to qualified immunity.

In summary, the court is denying the motion to dismiss Count I against defendants Spencer, Roden, and Sumner in their individual capacities. However, the court is granting the defendants' motion to dismiss Count I against defendants Clarke and Dickhaut in both their official and individual capacities. The court is also granting the motion to dismiss Count One against defendants Sumner, Roden, and Spencer in their official capacities.

B.   Count II: Americans with Disabilities Act

Count II of the RFAC alleges that the defendants violated plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. He seeks money damages. The court assumes that he is also seeking injunctive relief under the ADA.[2]

1.   Legal Standard

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

---

[2] It not clear whether Messere is seeking an injunction under the ADA. While he explicitly requested an injunction in Count I, he does not request any equitable relief in Count II. However, the court assumes for present purposes that the plaintiff is also requesting injunctive relief.

a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Title II authorizes suits by private citizens for money damages against public entities that violate Section 12132. See United States v. Georgia, 546 U.S. 151, 154 (2006). Plaintiffs may also seek injunctive relief requiring the public entity to reasonably accommodate their disability. See Dufresne v. Veneman, 114 F.3d 952, 954 (9th Cir. 1997) (citing Alexander v. Choate, 469 U.S. 287, 301 (1985)). The Supreme Court has held that Title II applies to inmates in state correctional facilities. See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

A suit under Title II must brought against a "public entity." See 42 U.S.C. §12132. A "public entity" includes any state or local government, or any department, agency, or instrumentality thereof. See 42 U.S.C. §12131. "A suit against a public official in his official capacity is a suit against the governmental entity itself." Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). Therefore, Title II claims may be brought against state officers acting in their official capacities. See, e.g., Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003); Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912-13 (7th Cir. 2003); Carten v. Kent State Univ., 282 F.3d 391, 396-97 (6th Cir. 2002).

"Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000).

The First Circuit has explained how Title II applies to a claim that a disabled inmate was denied adequate medical care:

> Medical care is one of the "services, programs, or activities" covered by the ADA. See Georgia, 126 S.Ct. at 881 (stating that the "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as ... medical care ... constituted 'exclu[sion] from participation in or ... den[ial of] the benefits of' the prison's 'services, programs, or activities'" (quoting 42 U.S.C. § 12132)). However, courts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care. See Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir.2005) ("[P]urely medical decisions ... do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.1996) ("The ADA does not create a remedy for medical malpractice."). As we have previously explained,
>
> > a plaintiff's showing of medical unreasonableness [under the Rehabilitation

Act]³ must be framed within some larger theory of disability discrimination. For example, a plaintiff may argue that her physician's decision was so unreasonable-in the sense of being arbitrary and capricious- as to imply that it was pretext for some discriminatory motive, such as animus, fear, or apathetic attitudes. Or, instead of arguing pretext, a plaintiff may argue that her physician's decision was discriminatory on its face, because it rested on stereotypes of the disabled rather than an individualized inquiry into the patient's condition-and hence was unreasonable in that sense.

Lesley v. Chie, 250 F.3d 47, 55 (1st Cir.2001) (internal quotation marks and citations omitted) (concluding that doctor's decision to refer HIV-positive patient to another hospital was not so unreasonable as to constitute discrimination under the Rehabilitation Act).

Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 284-85 (1st Cir. 2006); see also Buchanan v. Maine, 469 F.3d 158, 176 (1st Cir. 2006) ("We have described two situations in which a [Title II] challenge based on a [medical] treatment decision might be made: (1) the treatment decision was so unreasonable as to be arbitrary and capricious, raising an implication of pretext for some discriminatory motive, and (2) if not pretextual, the treatment decision was based on stereotypes of the disabled rather than an individualized inquiry as to the plaintiff's conditions.").

---

³ "The same standards . . . apply to claims under the ADA and under the Rehabilitation Act." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004).

2.   Analysis

Messere has sued the defendants in their individual and official capacities.   However, he has since clarified that his ADA claim is only brought against the defendants in their official capacities.[4]   The named defendants are or were state prison officials and, therefore, may be sued in their official capacity under Title II.   See Henrietta D., 331 F.3d at 288. Because the defendants are sued in their official capacities as officials of the DOC, this is a claim against the DOC.   See Surprenant, 424 F.3d at 19.

Messere alleges that he suffers from severe back pain due to spondylolisthesis, spondylois, and olisthesis.   The defendants concede that plaintiff has adequately alleged that he is a qualifying individual with a disability.   See Defs' Memo. in Supp. of Mot. to Dismiss at 20.

Messere has also adequately alleged that he was denied a service provided by the prison within the meaning of Title II.

---

[4] Messere states: "Messere does seek a damages award . . . against the Defendants in their individual capacities under Section 1983, and against Defendants in their official capacities under the ADA." See Messere's Opp. to Defs' Mot. to Dismiss at 7 n.2.   The court understands Messere's reference to Section 1983 to refer to Count I of the RFAC, which alleges violations of his Eighth Amendment rights.   Messere may not bring a claim under §1983 against the defendants in their individual capacities for violation of his rights under the ADA. See M.M.R.-Z ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9, 13 n.3 (1st Cir. 2008) ("Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages.").

He alleges that prison officials refused to provide him adequate medical care. Under Title II, the "deliberate refusal of prison officials to accommodate [the plaintiff's] denial of disability-related needs in such fundamentals as . . . medical care" is a denial of the prison's "services, programs, or activities." Georgia, 546 U.S. at 157; see also Kiman, 451 F.3d at 283.

The final question is whether the RFAC adequately alleges that Messere was denied medical care "because of" his disability. As explained earlier, it is not enough for Messere to allege that he received substandard medical treatment, as the ADA does not require the states to provide a certain level of medical treatment. See Buchanan, 469 F.3d at 174-75. Instead, Messere must provide sufficient factual allegations to create a reasonable inference that the medical treatment decisions he challenges were motivated by "animus, fear, or apathetic attitudes" toward his disability. Id.

The court finds that he has met this pleading burden. Messere alleges that instead of providing a doctor-recommended follow-up consultation, he was given ibuprofen and steroid injections. RFAC ¶¶20-21, 24-26. He was also placed in solitary confinement in spite of his disability. Id. ¶23. The alternative medical treatments and solitary confinement exacerbated his pain and suffering. Id. ¶¶23, 25. He further alleges that the DOC refused to provide him with adequate

treatment until after he filed this lawsuit. <u>Id.</u> ¶¶27-32. He ultimately received surgery to treat his back injury. <u>Id.</u> ¶32.

Accepting these allegations as true and drawing all reasonable inferences in Messere's favor, it is plausible to infer that the "defendants' actions regarding his diagnosis [and] medical consultations . . . were so unreasonable as to demonstrate that they were discriminating against him because of his disability." <u>Kiman</u>, 451 F.3d at 285. DOC employees, including some of the named defendants, allegedly knew of Messere's disability. The fact that his condition ultimately required surgery supports the inference that his prior treatment regimen, which involved far less substantial treatment than surgery, was inadequate. Furthermore, the fact that the doctor's recommendation for a follow-up consultation was ignored may evidence an intent to discriminate against Messere. The fact that Messere received more substantial medical treatment shortly after filing this lawsuit could tend to show that there was no legitimate reason to deny him that treatment previously. Taken together, these allegations allow for a plausible inference that the treatment decisions were "pretext for some discriminatory motive, such as animus, fear, or apathetic attitudes" toward Messere's spinal condition. <u>Id.</u> (quoting <u>Lesley</u>, 250 F.3d at 55). Accordingly, the court finds that

Messere has sufficiently alleged that he was denied adequate medical care "because of" his disability.

The defendants again argue that, as non-medical prison officials, they had no role in deciding what level of medical care Messere would receive.  As explained in the discussion of Count I, this argument must be decided based on an evidentiary record at summary judgment or trial.

The defendants also assert that the court should dismiss this claim because they are shielded by qualified immunity. However, qualified immunity does not apply to claims against a state official in his official capacity.  See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 n.3 (1st Cir. 1994).

There are some legal issues raised by plaintiff's ADA claim that the parties have not addressed.  Several courts have held that the discrimination requirement of Title II requires plaintiffs to prove that the defendants were deliberately indifferent to their rights to recover damages under Title II. See, e.g., Wilson v. Smith, 567 F. App'x 676, 679 (11th Cir. 2014); Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001).  However, neither party has addressed whether each defendant must have actual knowledge of the plaintiff's disability as is ordinarily required to prove deliberate indifference, or whether this requirement does not apply because the defendants are sued in their official

35

capacity.  Because this question has not been addressed by the parties, the court is not now deciding it.

Additionally, as explained earlier, the court assumes for present purposes that Messere is seeking injunctive relief under the ADA.  As explained with regard to Messere's §1983 claim for injunctive relief, the RFAC does not contain any allegations that show that Messere is still receiving inadequate medical care or is likely to receive inadequate care in the future. "While the past injury suffered by [Messere] may give [him] standing to sue for damages [under the ADA], 'it is insufficient predicate for equitable relief.'"  Lorenzo Font v. Francisco, 260 F. Supp. 2d 394, 402 (D.P.R. 2003) (quoting American Postal Workers Union, 968 F.2d 1373, 1376 (1st Cir. 1992)).  Neither party has addressed this issue or the predicate issue of whether the RFAC intends to seek equitable relief.  Therefore, the court is not now deciding whether Messere has adequately stated a cause of action for injunctive relief under the ADA.

For the foregoing reasons, the court is denying the defendants' motion to dismiss Count II insofar as it states a claim against the defendants in their official capacities.  The court is allowing the motion to dismiss Count II to the extent

that it is alleged against the defendants in their individual capacities.[5]

## VI.  JOHN DOE DEFENDANTS

The RFAC asserts claims against twenty unidentified defendants, "John Does #1-20."  RFAC ¶8.  These defendants are "agencies, organizations, and other entities, as well as officers, employees, representatives, agents, staff, or contractors" for the DOC.  Id.

"[A]s a general matter a plaintiff may bring suit against a fictitious or unnamed party where a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information."  Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007).  However, "a district court otherwise prepared to act on dispositive motions is not obligated to 'wait indefinitely for [the plaintiff] to take steps to identify and .

_____

[5] Dickhaut also argues that the court should dismiss any claims against him because he was first added to this lawsuit in the RFAC, and the plaintiff did not serve the RFAC on him prior to moving to amend the complaint to add him to this case.  Dickhaut has waived this argument.  Dickhaut's counsel, who represents all of the named defendants, had notice of the Motion for Leave to File the RFAC when it was filed on September 26, 2014. Defense counsel did not object to the addition of Dickhaut at that time.  On March 9, 2015, the court allowed the Motion for Leave to File the RFAC.  Finally, on March 26, 2015, Dickhaut objected to plaintiff's failure to comply with Local Rule 15.1. His delay of five months from when the Motion for Leave to File was submitted waived any objection for plaintiff's failure to comply with Local Rule 15.1.

. . serve unknown defendants.'" Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998) (quoting Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980)).  If the plaintiff does not serve the unnamed defendants within the time provided by the Federal Rules of Civil Procedure, the court may dismiss the claims against them for lack of personal jurisdiction.  Glaros, 628 F.2d at 685.

In September 2011, when Messere filed his initial complaint in the Spencer case, Messere had attached many portions of his medical files.  These attachments identify many of the people involved in his medical treatment.  In addition, Messere submitted his Motion for Leave to File the RFAC naming the John Doe Defendants more than a year ago, on September 16, 2014. That Motion was granted on March 9, 2015.  Messere also states that the parties have been engaged in discovery for more than four months, since April 9, 2015.  See Opp. to Defs' Mot. to Dismiss at 8 n.3.  However, the plaintiff has not moved to amend the RFAC to identify the John Doe defendants or served them.

The court finds that plaintiff has had adequate opportunity to conduct discovery and identify the John Doe defendants, but has failed to do so.  The 120-day period that the plaintiff had to serve the John Doe defendants has expired.  See Fed. R. Civ. P. 4(m).  Accordingly, the claims against the Doe defendants are

being dismissed without prejudice due to lack of personal jurisdiction.  See Glaros, 628 F.2d at 685.

VII.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  The defendants' Motion to Dismiss (Docket No. 80) is:

a) ALLOWED with respect to the claim asserted in Count I against defendants Clarke and Dickhaut;

b) ALLOWED with respect to the claim asserted in Count I against defendants Spencer, Roden, and Sumner in their official capacities.

c) DENIED with respect to the claim asserted in Count I against defendants Spencer, Roden, and Sumner in their individual capacities.

d) ALLOWED with respect to the claim asserted in Count II against all defendants in their individual capacity.

e) DENIED with respect to the claim asserted in Count II against all defendants in their official capacity.

2.  The claims against defendants John Does #1-20 are DISMISSED without prejudice.

3.  A scheduling conference will be held on November 16, 2015 at 3:00 p.m.  The parties shall comply with the attached Order concerning that conference.

```
                              /s/ Mark L. Wolf
                         _____
                         UNITED STATES DISTRICT JUDGE
```